**HAMMOND CORPORATION, a Delaware corporation, Plaintiff,**

**v.**

**GENERAL ELECTRIC CREDIT CORPORATION, a New York corporation, Defendant.**

**No. 73 C 2532.**

United States District Court,
N. D. Illinois, E. D.

April 30, 1974.

William T. Hart, Aaron J. Kramer, Schiff, Hardin & Waite, Chicago, Ill., for plaintiff.

George W. McBurney, Jerrold E. Fink, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

The plaintiff, Hammond Corporation (Hammond), a Delaware corporation having its principal place of business in Illinois, brings this diversity action under 28 U.S.C. § 1332, against the General Electric Credit Corporation (GECC), a New York corporation having its principal place of business in Connecticut. The plaintiff has filed a two count complaint seeking compensatory damages of $94,215.75 in the first count, for the alleged breach of several financing contracts, and a declaratory judgment in the second, finding that the plaintiff is not liable to the defendant for a like amount under a separate guaranty agreement. The defendant moves to transfer the instant suit pursuant to 28 U.S.C. § 1404(a) to the federal district court for the District of Massachusetts. For the reasons set forth hereinafter, we find that the defendant's motion must be denied.

### I

The plaintiff, Hammond, is engaged in the manufacture and sale of electronic organs and related products. It sells these organs exclusively at wholesale to independent musical instrument dealers who in turn offer the organs to the public at retail. The defendant is in the commercial financing business and has entered into a number of so-called floor plan financing agreements with various

independent dealers who sell Hammond organs. These agreements provide that the defendant will pay the invoice costs of goods shipped to the various dealers for which the dealer gives a security interest in such goods shipped in addition to promising to pay the defendant out of the proceeds of the retail sales of the financed inventory. It has been the plaintiff's standard policy to supplement this formal agreement by promising that if, for any reason, the creditor should repossess new Hammond organs from dealers, the plaintiff would, upon tender, repurchase the organs at the invoice price.

The defendant entered into one such floor plan financing agreement in March 1970 with Melody Ranch, Inc. (Melody), a Massachusetts corporation which owns several Massachusetts retail outlets which sell new Hammond organs. Under the original floor plan financing agreement between Melody and GECC, the defendant refused to extend credit to more than $150,000 worth of inventory. Accordingly, in order to permit Melody to obtain an additional $100,000 of financing from the defendant, the plaintiff, on September 14, 1972, issued a written guaranty to the defendant, which provided that:

Hammond Organ Company hereby guarantees payment in event of default of payment by the above referenced company [Melody] on a floor plan line of credit for an amount not to exceed one hundred thousand dollars [$100,000] for products manufactured by the Hammond Organ Company.

The plaintiff in its guaranty agreement expressly distinguished this additional $100,000 of financing from prior commitments, stating that the guarantee would not extend to the original $150,000 of credit. It also provided that the defendant must conduct inventory inspections every 30 days and notify the plaintiff of any sales made out of trust for which payment was refused within 15 days as conditions precedent for recovery. The term "out of trust" refers to financed sales made without an accounting to GECC.

Based upon the plaintiff's written guaranty, the defendant agreed to expand Melody's line of credit. It was soon discovered, however, that Melody was making substantial sales out of trust in violation of the floor plan agreement. In response to these improprieties the defendant sent Melody a notice of default and indicated that it was terminating the financing agreements on January 11, 1973. Thereafter, on January 15, 1973, the defendant notified the plaintiff that Melody had made $50,224.-11 worth of sales out of trust covered by the guaranty agreement and requested reimbursement in that amount.

Subsequent to this January 15, 1973 request for funds, a dispute arose between the parties as to first, the exact amount of sales which Melody made out of trust, and, second, whether the defendant had complied with the conditions necessary to establish liability under the guaranty agreement. On February 6, 1973, the defendant revealed that it had previously erred and that the amount of Melody's out of trust sales was in reality $94,215.75, and it increased its demand upon the plaintiff to that amount. The plaintiff contends that the defendant has been unwilling or unable to document that figure or, for that matter, any other figure. The plaintiff further maintains that the defendant failed to make the necessary inventory checks or to give the plaintiff timely notice of the default as required by the guaranty agreement and therefore is not entitled to the $94,215.75, even if that was the proper amount.

The parties attempted to resolve their differences through negotiations, but apparently were unyielding as to their respective positions. Accordingly, in an unilateral attempt to recover monies which it deemed due and owing, the defendant claimed a set-off from separate payments owed to the plaintiff on behalf of other GECC financed Hammond organ

dealers representing totally unrelated sales. Thus instead of tendering $106,-821.21, which was the invoiced amount billed by the plaintiff on June 1, 1973, the defendant sent a check to the plaintiff on June 20, 1973, for $12,605.46, which represented the difference between the current invoice amount and the plaintiff's alleged liability under the Melody guaranty agreement. Responding to what the plaintiff characterizes as unjustifiable extra-legal self help, the plaintiff filed this suit requesting in count one the $94,215.75 withheld by the defendant and, in count 2, declaratory relief finding that the plaintiff is not accountable to the defendant for the $94,215.75 under the guaranty agreement.

## II

■ Based upon the aforementioned facts, the defendant has offered seven considerations in support of its motion to transfer. These considerations are:

1. The primary focus of the plaintiff's complaint is upon activities which occurred in Massachusetts.
2. Massachusetts law would govern most if not all questions in dispute.
3. Necessary non-party witnesses are beyond the compulsory process of this court but would be subject to such process upon transfer.
4. Impleader or joinder of necessary parties is impossible in this district but is possible in the District of Massachusetts.
5. Related matters are pending in Massachusetts.
6. The defendant's pertinent records are located in Massachusetts.
7. The defendant's employee-witnesses are located in Massachusetts.

While we do find these considerations to have some merit, when balanced against the interests of the plaintiff, we do not find them to be sufficiently compelling as to warrant the requested transfer.

We do agree that the pivotal issues in this case relate to the defendant's relationship with Melody in Massachusetts. There seems to be little dispute as to the plaintiff's allegations in count one. The defendant appears to concede that it retained the June 20, 1973 set-off, and that it was for $94,215.75. Rather the major factual disputes relate to count two which deals with the defendant's alleged defense for taking the set-off. The court will therefore probably have to concentrate more heavily on determining whether $94,215.75 represents the amount of Melody's out of trust sales and also whether GECC complied with the conditions precedent set forth in the guaranty agreement. While these transactions took place in Massachusetts, the difficulty in proving them does not appear so substantial as to require that forum to try the case. The question of amounts sold out of trust can easily be shown by documentation. Questions of when, and if, the inventory inspections were made may be ascertained through documents and compulsory depositions. The offering of proof as to these issues, therefore, while involving activity in Massachusetts, does not appear to present any serious logistical problems whether the case is tried there or here.

As to the other considerations, the non-party witnesses which the defendant complains are beyond compulsory process are still subject to deposition and are thus readily accessible for evidentiary purposes. Also, if we were to grant the transfer, the plaintiff would be faced with a problem of transporting its witnesses residing in Illinois giving rise to a somewhat equivalent trade-off in inconveniences. Regarding the defendant's additional fears of being unable to join necessary parties, it should be noted that any party which it might include in this action has already been sued by the defendant in a related Massachusetts state court suit and thus the defendant is not without a remedy as to those parties.

■■ Defendant has referred us to decisional law which holds that a case should be transferred to another district

where a related case is pending. Jacobs v. Tenney, 316 F.Supp. 151 (D.Del. 1970); Jahncke Service, Inc. v. OKC Corp., 301 F.Supp. 866 (D.Del.1969). Clearly these cases apply only where *federal civil cases* are pending in the transferee district as the rationale behind such transfers is to permit the consolidation of the related matters before one court. Such consolidation contributes to economies of time, energy, and money, as well as avoiding duplicative litigation and the possibility of inconsistent judgments. Where, as here, however, the pending actions are in state court and in bankruptcy court and involve different parties and issues, the instant suit could not be combined with any of these actions in their current posture and, therefore, a transfer of this suit to Massachusetts would still leave cases before three separate tribunals. There is, accordingly, no advantage in terms of judicial administration in such a transfer.

■ Finally, the fact that most of the defendant's documentary evidence and witnesses are in Massachusetts is counterbalanced by the assertions of the plaintiff that most of its evidence and witnesses are in Illinois. Thus, even though we may have to examine Massachusetts activities, it does not appear that the inconvenience of requiring the defendant to litigate in Illinois is substantially greater than the inconvenience that would be visited upon the plaintiff if we were to reach a contrary decision. On the other hand, a certain amount of credence must be given to the plaintiff's choice of forum, Butterick Company, Inc. v. Will, 316 F.2d 111 (7th Cir. 1963). We agree with the prevailing authority which holds that there should be a clear balance of inconvenience in favor of the defendant before the plaintiff's choice of forum should be disturbed. *Butterick, supra*; Chicago, Rock Island and Pacific R. Co. v. Igoe, 220 F. 2d 299 (7th Cir. 1955), cert. den. 350 U. S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955). We are not persuaded that such a clear balance exists in this case and therefore are disposed to exercise our discretion in favor of retaining the case.

A further factor which supports our decision not to transfer is the relative congestion of the Massachusetts court's docket vis a vis our own. As the plaintiff correctly points out, the Massachusetts district court has probably the most crowded calendar of any major metropolitan federal court. As of the close of the most recent fiscal year, Massachusetts had 6,968 pending civil cases while the Northern District of Illinois had only 2,683. This represents 1,220 civil cases per judgeship in Massachusetts and 261 civil cases per judgeship in Illinois. More significantly, civil cases are taking twice as long to dispose of there as are cases in this district; the 1973 fiscal statistics reflecting a median time of twelve months from filing to disposition in Massachusetts, as compared to only six months here. Those differences are not insubstantial and evidence the likelihood of a much more expeditious disposition of the litigation in this forum. Since the courts have expressly recognized the relative states of the calendars in the two districts as being material when considering a motion to transfer, we find that in the interests of justice, we should retain jurisdiction. Chicago, Rock Island and Pacific Railroad Co. v. Igoe, *supra* at 303.

Accordingly, based on the relative inconveniences of the parties plus the anticipated delays awaiting the parties if we were to transfer to Massachusetts, we find that the defendant's motion to transfer must be denied. An appropriate order will enter.